RECEIVED
SEP 3 0 2005
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| BARBARA N. DUHON | CIVIL ACTION NO. 04-1983 |
| VS. | JUDGE DOHERTY |
| COMMISSIONER OF SOCIAL SECURITY | MAGISTRATE JUDGE METHVIN |

## REPORT AND RECOMMENDATION

Before the court is an appeal of the Commissioner's unfavorable disability finding. Considering the administrative record, the briefs of the parties and the applicable law, it is recommended that the Commissioner's decision be **AFFIRMED**.

### *Background*

Born on December 3, 1950, Barbara N. Duhon ("Duhon") is a 54-year-old claimant with a tenth-grade education. (Tr. 240). Duhon has worked in the past as a cashier and janitor/cleaner. (Tr. 15).

On July 15, 2002, Duhon filed applications for disability insurance benefits and supplemental security income benefits, alleging disability as of June 25, 2002 due to high cholesterol, thyroid disease, high blood pressure, dizziness, weakness, and a back injury. Her application was denied initially and on reconsideration. An administrative hearing was held on December 3, 2003, and a supplemental hearing was held on April 28, 2004. Duhon was unrepresented at both hearings. In an opinion dated May 18, 2004, the ALJ found that Duhon retains the ability to perform a modified level of sedentary work that includes her past work as a cashier. (Tr. 15). The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner from which Duhon now appeals.

### *Assignment of Errors*

Duhon raises two errors on appeal: (1) The ALJ erred in assessing too much weight to the opinions of non-treating, non-examining physicians in concluding that she retains the residual functional capacity for sedentary work; and (2) the ALJ erred in concluding that Duhon's complaints of pain were less than credible.

### *Standard of Review*

The court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards. Carey v. Apfel, 230 F.3d 131, 136 (5th Cir. 2000); Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Carey, 230 F.3d at 136; Anthony, 954 F.2d at 292; Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991). The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion. Carey, 230 F.3d at 136; Johnson v. Bowen , 864 F.2d 340, 343 (5th Cir.1988). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Johnson, 864 F.2d at 343.

### *Analysis*

In determining whether a claimant is capable of performing substantial gainful activity, the Secretary uses a five-step sequential procedure set forth in 20 C.F.R. §404.1520(b)-(f) (1992):

1. If a person is engaged in substantial gainful activity, he will not be found disabled regardless of the medical findings.
2. A person who does not have a "severe impairment" will not be found to be disabled.

3. A person who meets the criteria in the list of impairments in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.

4. If a person can still perform his past work, he is not disabled.

5. If a person's impairment prevents him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

In the instant case, the ALJ determined at Step 4 that, although Duhon suffers from the severe impairments of back, shoulder, and right hand problems, she is not disabled because she retains the residual functional capacity to perform sedentary work with restrictions from climbing, balancing, or kneeling, operating or working around hazardous equipment or machinery, and working around dangerous unprotected heights. The ALJ concluded that such work includes Duhon's past work as a cashier. (Tr. 15-16).

After careful consideration of the record, the undersigned concludes that the ALJ's decision is supported by substantial evidence.

1. **Medical History**

Duhon was injured on June 25, 2002 while working for Family Dollar Stores as a freight stocker and cashier. The record shows that while unloading a truck, Duhon injured her back while putting down a 10-lb. box she'd been carrying. Duhon states that she heard a "pop" as she was getting up. She was seen in a family clinic on that day and was given medication and

released to light duty work. Duhon claims that, although she tried to go back to work afer the accident, she has been unable to work since June 30, 2002. (Tr. 110).

Duhon was examined by Dr. John E. Cobb, an orthopedic surgeon, on September 12, 2002. Dr. Cobb reported that Duhon's range of motion was restricted by pain, but that her motor and sensory function were normal, and straight leg testing in the sitting and supine positions was negative bilaterally. (Tr. 111). Duhon had a positive Tinel's bilaterally.[1] (Id.). Although x-rays were not available, a lumbar MRI demonstrated a far lateral disc protrusion to the left at L4-5 and some dessication of the L5-S1 disc. (Id.). Dr. Cobb diagnosed Duhon with post-traumatic cervical, thoracic, and lumbar pain syndrome, a mid-back sprain, and a disc-related condition in the cervical spine. (Id.). Dr. Cobb stated that Duhon was unable to work at that time. (Id.).

Duhon was examined by Dr. Nathaniel Winstead, a family practice doctor, on November 2, 2002. She complained of headaches, blurry vision, and back pain. Dr. Winstead reported that Duhon walked well around the exam room and office, got on and off the exam table and out of chairs "without any problem whatsoever." (Tr. 1818). Her gait and station were normal, her grip strength was 5/5 bilaterally, and she had no atrophy or deformity of any muscle groups. (Tr. 181). Additionally, Duhon had 70 degrees of lumbar spine extension and 10 degrees of right and left lateral lumbar spine flexion. Straight leg raising was 50 degrees on the right side, 30 degrees from a laying position on the table, and 90 degrees bilaterally from a sitting position. Dr.

---

[1] Tinel's sign is defined by MedicineNet.com as follows:

> An examination test that is used by doctors to detect an irritated nerve. Tinel's sign is performed by lightly banging (percussing) over the nerve to elicit a sensation of tingling or "pins and needles" in the distribution of the nerve. For example, in a person with carpal tunnel syndrome where the median nerve is compressed at the wrist, Tinel's sign is often "positive" and causes tingling in the thumb, index, and middle fingers.

Winstead noted that Duhon laid straight back on the table "without any difficulty," although she had slight loss of the natural lordotic curve of the lumbar spine consistent with her history of back injury. (Tr. 182). Dr. Winstead reported that Duhon's range of motion was limited by her back pain, and he noted that she has limitations on her ability to lift and possibly stand for extended periods of time, however he stated that she had no limitations on her ability to sit, walk, hear, speak, and handle objects. (Id.).

Duhon was examined by Dr. Alfred E. Buxton, a clinical psychologist, at the request of Disability Determination Services on January 2, 2003. Dr. Buxton reported that Duhon's social skill was good; her recent and remote memories were intact; her ability to attend and concentrate was good; pace was even with a regular rate of performance and a normal response latency; intellect was within normal limits, as were her adaptive daily living skills; judgment, reasoning, and reflective cognition were good; insight was fair; and cognitions were clear and cogent. Dr. Buxton noted that Duhon's effect was sad, with episodic open tearfulness. (Tr. 193). Dr. Buxton assessed Duhon with a G.A.F. (Global Assessment of Current Functioning) score of $60^2$ over the last 7 months, and 75 for the 5 months prior. Dr. Buxton diagnosed Duhon with Dysthmic Disorder with degree of impairment moderate and prognosis fair to guarded, and chronic pain

---

[2] The Attorneys' Textbook of Medicine provides the following explanation of GAF scoring:

> The GAF Scale indicates psychological, social, and occupational functioning on a hypothetical continuum from 90 through 81 (absent or minimal symptoms of mental illness) to transient symptoms (scores of 71 through 80) to mild (scores of 61 through 70) to moderate (scores of 51 through 60) to serious (scores of 41 through 50); scores decline with greater degrees of impaired mental health to the point that the patient shows persistent danger of severely hurting self or others or persistent inability to maintain minimal personal hygiene or serious suicidal act with clear expectation of death (scores of 10 through 1). A score of 0 is assigned if inadequate information is available.

See Whitzell v. Barnhart, 379 F.Supp.2d 204, 210 (D.Mass.2005).

with degree of impairment moderate and prognosis fair to guarded. (Tr. 193). Dr. Buxton recommended outpatient mental health intervention and stated that when Duhon demonstrated improvement in her overall mental status, she could be referred to Louisiana Rehabilitation Services for training and job placement. Dr. Buxton stated that, prior to any positive feedback from mental health services, job placement would be premature:

> She may be able to secure gainful competitive employment, but it is unlikely she would be able to maintain that employment for a brief period of time much less for a protracted period of time secondary to the negative impact of the dysthymia and the chronic pain on her reliability and dependability. She would tend to be somewhat overwhelmed by the frustration and stress she would encounter in the job setting and one probably would see exacerbation in the dysthymia and the chronic pain.

(Id.).

On July 21, 2003, Duhon was examined again by Dr. Cobb, who reported that she continued to complain of back, right shoulder, and right hand pain. Dr. Cobb reported that Duhon's range of motion was good, and that her motor and sensory exams were normal. (Tr. 214). With respect to her right hand, she was weakly positive for Tinel's sign. Duhon's stance, posture and gait were all normal, she had no spasm or tenderness, although there was some pain in her thoracolumbar area, and she had a positive straight leg raise test. Dr. Cobb concluded that Duhon had cervical pain with some parasthesias in the upper extremity, suggesting some peripheral compression, and he recommended a cervical MRI, EMG, and nerve conduction studies of the right upper extremity. He also recommended that she undergo a transforaminal nerve block at L4-5 on the left to address the lateral disc herniation at that level. (Tr. 214-15).

An MRI of Duhon's cervical spine dated July 3, 2003 showed cervical spondylosis and non-specific straightening or mild reversal of the normal cervical lordosis, as well as a small,

broad-based left paracentral protrusion causing only minimal contributory effect to the spondylosis and mild bilateral foraminal narrowing at C5-C6 and C6-C7, largely due to uncovertebral joint hypertrophy. (Tr. 217). An MRI of Duhon's lumbar spine taken on the same date was essentially negative. (Tr. 218).

On November 13, 2003, Dr. Cobb examined Duhon again, noting that Duhon complained of pain in her cervical and thoracic regions, as well as in her back, but that "it appear[ed] that this is primarily sprain/strain." (Tr. 221). Dr. Cobb reviewed the July 2003 MRIs, noting that Duhon had a mild bulge at L4-5, but that, otherwise, her studies looked good. Dr. Cobb referred Duhon to Dr. Daniel Hodges, a rehabilitation specialist, for pain management. (Id.).

Duhon was examined by Dr. Steven Davidoff, an internist and gastroenterologist, on January 31, 2004. She complained of neck pain and left leg pain. (Tr. 223). Dr. Davidoff reported that Duhon walked well and was able to get on and off the exam table and into chairs "with no problem." (Tr. 224). He further reported that shoulder rotation was 60 degrees on both the right and left sides; cervical spine flexion was 40 degrees, extension was 40 degrees, lateral flexion was 40 degrees, right rotation was 80 degrees; lumbar spine flexion was 60 degrees, lateral flexion right was 10 degrees, and left was 10 degrees. (Tr. 225). Dr. Davidoff reported that Duhon had an "exaggerated effect . . . [s]he was crying during the exam." (Id.). Dr. Davidoff noted that Duhon had decreased range of motion and decreased upper extremity strength, and likely had a decreased ability to lift heavy objects and possibly stand for periods greater than six hours, although he did not think that her mood swings and crying spells would keep her from working, and he did not think that she had any other decreased abilities to hear, speak, sit, or handle objects. (Tr. 225-26).

In a medical source statement, Dr. Davidoff reported that Duhon can lift and carry less than 20 pounds frequently;[3] stand and/or walk about six hours in an eight hour workday; has no sitting restrictions; is limited to pushing and pulling with the lower extremities only; can never climb, balance, or kneel, but can frequently crouch and crawl; has no restrictions in the areas of reaching, handling, fingering, and feeling; and has no visual limitations, but cannot work around hazardous machinery and dangerous heights. (Tr. 227-29).

2. **Weight Given to Opinions of Non-Treating, Non-Examining Physicians**

Duhon contends that the ALJ placed too much emphasis on the opinions of non-treating, non-examining physicians.

Although not conclusive, an evaluation by the claimant's treating physician should be accorded great weight. Martinez v. Chater, 64 F.3d 172, 175-76 (5th Cir. 1995), citing Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir.1994), cert. denied, 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (U.S.1995). A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." 20 C.F.R. § 404.1527(d)(2). Even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, "the ALJ has sole responsibility for determining a claimant's disability status." Martinez, 64 F.3d at 176, citing Moore v. Sullivan, 919 F.2d 901, 905 (5th Cir.1990). Where there are apparent conflicts in the record between or among medical sources, "the Commissioner, rather than the Courts, must resolve conflicts in the evidence." Martinez, 64 F.3d at 174. Thus, "the ALJ is free to reject the

---

[3] The record is unclear as to how many pounds Dr. Davidoff believes Duhon can carry occasionally.

opinion of any physician when the evidence supports a contrary conclusion." Martinez, 64 F.3d at 176, citing Bradley v. Bowen, 809 F.2d 1054, 1057 (5th Cir.1987) (citation omitted). However, an ALJ cannot reject a medical opinion without an explanation. Loza v. Apfel, 219 F.3d 378, 395 (5th Cir. 2000), citing Strickland v. Harris, 615 F.2d 1103, 1110 (5th Cir.1980); Goodley v. Harris, 608 F.2d 234, 236 (5th Cir.1979).

Duhon appears to argue that the ALJ should have given more weight to the opinions of Dr. Cobb. Yet, the record shows that the ALJ properly considered the opinions of Dr. Cobb. The ALJ found that, although Dr. Cobb reported a small disc herniation in 2002, an MRI of the claimant's cervical spine in July 2003 showed only mild defects, while an MRI taken of Duhon's lumbar spine at the same time was completely normal. (Tr. 217-21). The ALJ also pointed out that, although Duhon appeared to have a small diffuse protrusion in her neck at the latter date, the radiologist performing the MRI did not believe that this was clinically significant, stating that it had only a "minimal contributory effect." (Tr. 217). Indeed, Dr. Cobb states in his July 2003 report that Duhon's studies "looked good." (Tr. 221). Thus, although Dr. Cobb reported in September 2002 that Duhon was unable to work, his later reports confirm that diagnostic testing showed only mild defects, and he referred Duhon for pain management only, with no further recommendation that she not work.

With respect to Duhon's mental health, the ALJ did not ignore the report of Dr. Buxton, as Duhon alleges in her brief. Rather, the ALJ noted that, although Dr. Buxton stated that Duhon could not return to work until feedback from mental health services indicated that her mental health had improved, Dr. Buxton nevertheless assessed Duhon with a G.A.F. of 60, which he

stated is indicative of "mild symptomatology and mild impairment in social, occupational and other areas of functioning." (Tr. 14).

Although the ALJ is incorrect in his conclusion that a G.A.F. score of 60 is indicative of only "mild" symptoms and impairments – the G.A.F. continuum shows that scores of 60 through 70 are considered "mild" while scores of 51 through 60 are considered "moderate" – the undersigned nevertheless concludes that the ALJ's analysis of Dr. Buxton's findings was well-reasoned. Dr. Duhon reported that Duhon's ability to attend and concentrate was good; her pace was even with a regular rate of performance and a normal response latency; her intellect was within normal limits, as were her adaptive daily living skills; judgment, reasoning, and reflective cognition were good; insight was fair; and cognitions were clear and cogent. (Tr. 193). Furthermore, Dr. Buxton diagnosed Duhon with only *moderate* dysthmic disorder and *moderate* chronic pain. Considering the foregoing, the undersigned concludes that Dr. Buxton's report describes a mental health status that is moderately impaired and not totally disabling, and the ALJ properly discounted that portion of Dr. Buxton's report suggesting otherwise.

Finally, the undersigned concludes that the evidence in the record supports the ALJ's residual functional capacity assessment. Despite finding that Duhon has some back and neck pain, both Dr. Winstead and Dr. Davidoff opined that Duhon's limitations would not preclude her from doing sedentary work. The ALJ concluded that any sedentary work that Duhon does must allow for her inability to stand or walk for more than six hours in an 8-hour workday, her inability to push/pull with either upper extremity, her inability to do any climbing, balancing, or kneeling, and her inability to work around hazardous machinery and dangerous heights, thus taking into account the limitations imposed by Drs. Winstead and Davidoff. Considering the

undersigned concludes that the ALJ's residual functional capacity is supported by the evidence in the record.

### 3. **Complaints of Pain and Credibility**

Duhon also contends that the ALJ erroneously determined that she was only partially credible regarding her complaints of pain.

The law of the Fifth Circuit is that pain reaches the level of a disabling complaint when such pain is constant, unremitting, and wholly unresponsive to therapeutic treatment. Francois v. Commissioner of Social Sec., 2001 WL 322194, *11 (E.D. La. 2001), citing Falco v. Shalala, 27 F.3d 160, 163 (5th Cir. 1994). As to a determination of whether a claimant's pain is disabling, the first consideration is whether the objective medical evidence shows the existence of an impairment which could reasonably be expected to produce the pain alleged. Francois, 2001 WL 322194, at *11. Generally, medical factors that indicate disabling pain include limitation of range of motion, muscle atrophy, strength deficits, sensory deficits, reflex deficits, weight loss or impairment of general nutrition, noticeable swelling, and muscle spasm. Id. Other "medical signs" that support a finding that a claimant is disabled include a physician's diagnosis based upon history, symptoms and response to medication.

When there are conflicts between subjective complaints of pain and objective evidence, the ALJ is to evaluate the claimant's credibility. Carrier v. Sullivan, 944 F.2d 243, 247 (5th Cir. 1991). "How much pain is disabling is a question for the ALJ since the ALJ has primary responsibility for resolving conflicts in the evidence." Carrier, 944 F.2d at 246. This court may not reweigh the evidence. Id., citing Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir.1990).

In the instant case, the ALJ concluded that Duhon's complaints of pain are less than credible, noting that, despite complaints of constant pain in her back, arm, shoulder, and hand, Duhon "has never exhibited any major motor, sensory, neurological, reflex or circulatory deficits on clinical examination." (Tr. 14). This conclusion is supported by the record. Although Duhon has had some limitations in ranges of motion in her back and neck, there is no clinical diagnosis of muscle atrophy in any of the allegedly affected muscle groups, a finding the ALJ explained is "a clear sign that the claimant must have been using those muscles in a manner contrary to what one would expect given the presence of allegedly disabling pain." (Id.). Furthermore, Duhon's doctors have noted only mild to moderate back and neck impairments, which is inconsistent with Duhon's complaints of totally unremitting and disabling pain.

Considering the foregoing, the undersigned concludes that the ALJ did not err in concluding that Duhon's complaints of pain are less than credible.

4. **New Evidence**

Finally, although not raised as a specific error on appeal, the undersigned addresses the issue of the absence of any medical records from Dr. Daniel Hodges. Duhon contends that she is currently being treated by Dr. Daniel Hodges for her chronic back problems. She alleges that she was examined by Dr. Hodges twice before her administrative hearing, although she does not state whether these visits occurred before the December 3, 2003 hearing or before the April 28, 2004 supplemental hearing. Duhon states that that the records have been requested but have not yet been received.

The Fifth Circuit has held that evidence submitted for the first time to the Appeals Council is part of the record on appeal, and that district courts should consider and address such

13

evidence when it reviews a case on appeal. See, e.g., Higginbotham v. Barnhart, 405 F.3d 332, 337-38 (5th Cir. 2005). By contrast, a district court may consider evidence presented to it for the first time only when the evidence is new and material and good cause is shown for not presenting it in an earlier proceeding. Rodriguez v. Barnhart, 252 F.Supp.2d 329, 336 (N.D.Tex. 2003), citing 42 U.S.C. §405(g).

In the instant case, the record shows that the "new evidence" at issue – medical records from Dr. Daniel Hodges – has never been presented, either to the ALJ, the Appeals Council, or this court on appeal, and the court cannot, therefore, assess whether the evidence is "new" or "material." Furthermore, Duhon fails to offer a good explanation for why the information has not been submitted. To the extent that Duhon argues that Dr. Hodges' reports have not been submitted because she was not represented by counsel until after her hearings, such argument is unpersuasive. The fact that a social security disability claimant obtained new counsel after an administrative proceeding concluded, and that new counsel subsequently sent claimant to a new doctor, has been held to not satisfy the requisite good cause requirement for remand to the Commissioner for consideration of newly produced evidence. See, e.g., Geyen v. Secretary of Health and Human Services, 850 F.2d 263, 264 (5th Cir.1988).

Considering the foregoing, any claim that Dr. Hodges' report should be considered by this court is without merit.

### *Conclusion*

Considering the foregoing, it is recommended that the ALJ's decision be **AFFIRMED**.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have ten (10) days from receipt of this Report and Recommendation to file specific, written objections

with the Clerk of Court. Counsel are directed to furnish a courtesy copy of any objections or responses to the district judge at the time of filing.

Any judgment entered herewith will be a "final judgment" for purposes of the Equal Access to Justice Act (EAJA). See <u>Richard v. Sullivan</u>, 955 F.2d 354 (5th Cir. 1992) and <u>Shalala v. Schaefer</u>, 509 U.S. 292 (1993).

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See <u>Douglass v. United Services Automobile Association</u>, 79 F.3d 1415 (5th Cir. 1996).**

Signed at Lafayette, Louisiana on September 30, 2005.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)